------------------------------------------------------------------

In re

      PROMEDICUS HEALTH GROUP, LLP      Case No. 03-10102 K

                                  Debtor
------------------------------------------------------------------
Mark S. Wallach, as Trustee of Promedicus Health
Group, LLP
                               Plaintiff
                    -vs-                              AP No. 05-1021K

Gary Douglas, M.D.
Katherine O'Donnell, M.D.
Rexford L. Thomas, Jr., M.D.
Jeffrey Berndston, M.D.
Promedicus Health Group Savings and
Investment Plan c/o Mark S. Wallach, Esq.,
Trustee in Bankruptcy                         **OPINION AND ORDER**
Promedicus Health Group, LLC c/o
Mark S. Wallach, Esq., Trustee in Bankruptcy
Fidelity Investments Institutional Operations
Company, Inc.
Fidelity Investments
Fidelity Management Trust Company

                               Defendants
------------------------------------------------------------------

            K. Michael Sawicki, Esq., and Mark J. Schlant, Esq.
                404 Cathedral Place, 298 Main Street
                        Buffalo, NY   14202

                    Attorneys for Plaintiff - Trustee


             Ryan L. Gellman, Esq. and Paul G. Joyce, Esq.
                     Colucci & Gallaher, P.C.
                     424 Main St., Suite 2000
                        Buffalo, NY   14202

        Attorneys for Gary Douglas, M.D., Rexford L. Thomas, Jr., M.D.
            Katherine O'Donnell, M.D., Jeffrey Berndston, M.D.

The cornerstone of the Trustee's evidence of insolvency is the expert opinion of the certified public accountant who had been regularly engaged as such by the Debtor on a pre-petition basis.  He was retained by the Trustee to perform the insolvency analysis for the Chapter 7 Estate.  He opined that the Debtor was insolvent on August 2, 2002 and thereafter, in accordance with applicable statutes.

In response thereto, the Defendants provided a certified professional accountant's review of the Trustee's accountant's opinion.  The Defendant's accountant emphasized that he "did not review the working papers, research or other source documents used in connection" with his report and, accordingly, "cannot comment on the adequacy, relevancy or sufficiency of such information."  In other words, his report is an examination of the Plaintiff's accountant's statement of opinion.  Most importantly, he emphasized that "in order to determine the actual date of insolvency, it is necessary . . . to review additional documentation," including complete partnership tax returns for years 2002, 2003, and 2004; New York State payroll tax and sales tax returns prepared for each of the four quarters in 2002; general ledgers, cash disbursement journals, cash receipts journals, and any other books of original entry used to report the transactions of Promedicus during the period from January 1, 2002 through December 31, 2004; month-end accounts receivable and accounts payable aging schedules for 2002; inventory records maintained by the partnership in 2002; bank statements, cancelled checks, and bank reconciliations beginning January 1, 2002; accountant work papers and schedules used in the preparation of monthly or annual financial statements of the Debtor beginning January 1, 2002; accountant work papers and schedules used in the preparation of the income tax returns of the

Debtor for the years ending December 31, 2002 and thereafter; agreements with clients, patients, health plans, providers, financial institutions, contractors, vendors, suppliers, employees, or partners which were in effect at any time during 2002; invoices for all payments made to vendors, suppliers, etc. beginning January 1, 2002; invoices for all property and equipment listed on the partnership's fixed asset schedule as of December 31, 2002; and documentation for outstanding lawsuits naming Promedicus as either Plaintiff or Defendant, which was resolved in 2002 or remained unresolved as of the date of the filing of the petition.

This requires the Court to address the difficult procedural posture of this adversary proceeding, and requires that the Court, for the time being, go no further in its resolution of the current motion.

The Defendants have thoroughly preserved their right to argue that the Plaintiff Trustee has not appropriately responded to the Defendants' discovery demands, which demands, inter alia, sought the very kinds of information that their expert says he requires.

The books and records of the Debtor have been well and thoroughly preserved by the Trustee, and are so voluminous that they occupy significant rental space.  It the Court's understanding that they are in the form turned over to the Trustee by the Debtor, which is a state of total disarray.  It is this writer's recollection that the state of affairs was once described to the Court as being "as if everyone affiliated with Promedicus emptied the contents of their desks and turned over those contents along with their computer hard drives and other storage media."

At one point during the pendency of this case, the Trustee obtained an estimate of what it would cost to carefully inventory these books and records, and to Bates stamp them in

order to facilitate retrieval, and the estimate was in the low six digit range.

The procedural posture is further complicated by the fact that during the pendency of this Chapter 11 case, related civil litigation was pending in the United States District Court for this district, litigation commenced by the Debtor's largest unsecured creditor against, inter alia, the individual medical providers that had made up the Debtor's enterprise. The Trustee in this Chapter 7 case became the target of third party discovery demands by the Plaintiff in that civil litigation. This Court, over the objection of the Trustee,[1] granted to the Plaintiff in the civil litigation, access to the books and records of the Debtor in their raw form. Confidentiality was to be maintained by the Plaintiff in the civil litigation, subject to the orders of the District Court in the civil litigation. Moreover, that Plaintiff was to take over the carrying costs of the maintenance of the books and records, was to perform a detailed inventory at its own expense, and to share the product of its examination, i.e. the inventory, with the Trustee.

Ultimately, to this Court's understanding, the civil litigation in the District Court was settled or otherwise dismissed. Eventually, the Defendants in the present adversary proceeding sought an Order from this Court granting them access to the work product of the Plaintiff in the civil litigation. That Plaintiff objected to that request, and this Court upheld the objection.

The Trustee, throughout the present adversary proceeding, has invited the Defendants to make their own examination of the Debtor's books and records, waiving any

---

[1] At that time, it had not yet become clear whether the Plaintiff in this civil litigation was actually a creditor of this Debtor, or, to the contrary, might become a defendant in an action by the Trustee.

privilege in regards thereto. The Defendants have declined that invitation, given the considerable expense that would be involved were it to accept that invitation as an alternative to its right to specific responses to specific document demands and interrogatories.

Prior to taking the present motion under submission, the Court attempted to fashion some form of relief that would break this discovery impasse. For example, the Court considered a preclusion order against the Trustee's use of any materials from those books and records. But such an order would not, of itself, fairly protect the Defendants to the extent that an effective defense may be found in the information contained in those books and records.

The Defendants, thus, have insisted that the Trustee's motion for summary judgment comes too soon.

Having now seen the Trustee's proffered evidence on the key question of insolvency, and the Defendants' expert's response thereto, the Court now agrees with the Defendants that this Court can go no further, at this time, in deciding the Trustee's motion. If the Trustee were to provide the specific information that the Defendants' expert states he needs in order to perform his own insolvency analysis, and if such an analysis were at odds with the Trustee's expert's opinion, there would be a triable issue of what could be a dispositive material fact, requiring denial of the balance of the Trustee's motion for summary judgment.

Consequently, having determined (in a separate opinion filed herewith) the applicable definition of "insolvency" for purposes of this adversary proceeding, this Court will proceed no further with the current motion, but instead must reopen argument as to the discovery dispute.

This case is restored to the calendar for October 28, 2009 at 2:00 p.m. for such argument.  No later than two days prior thereto, the Trustee shall deliver to the Court, under seal, the inventory of the document room, for <u>in</u> <u>camera</u> examination that might assist the Court in deciding the discovery dispute.

SO ORDERED.

Dated:	Buffalo, New York
	October 14, 2009

						s/ Michael J. Kaplan
						_____
						U.S.B.J.